IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA02 MAY -3  PM 4: 20
NORTHEASTERN DIVISION

U S.
N D. OF A L A B A M A

DOUGLAS A. KINCAID,                    }
                                       }
    Plaintiff,                         }
                                       }
v.                                     }          Case No. CV 01-B-1191-NE
                                       }
TENNESSEE VALLEY AUTHORITY,            }
                                       }
    Defendant.                         }          **ENTERED**
                                       }
        **MEMORANDUM OPINION**          MAY - 3 2002

     Currently before the court is a Motion to Dismiss or, in the Alternative, for Summary Judgment filed by Defendant Tennessee Valley Authority ("defendant" or "TVA"). Plaintiff Douglas A. Kincaid ("plaintiff" or "Kincaid") asserts claims under the Rehabilitation Act of 1973 ("Rehabilitation Act"). Upon consideration of the record, the submission of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendant's motion to dismiss is due to be granted.

     Plaintiff is a former Assistant Unit Operator ("AUO") at TVA's Browns Ferry Nuclear Plant ("Browns Ferry"). (Compl. ¶¶ 11-14, 17.) Plaintiff claims (1) that he was subjected to disability discrimination when he was placed on leave in 1996, (Compl. ¶¶ 7-8), and (2) that he was constructively discharged when he was placed on leave for longer than thirty days, a circumstance that required a medical examination upon his return to work in 1997, (Compl. ¶¶ 8, 11, 17). Plaintiff alleges that TVA's medical personnel diagnosed him with a mental disease or defect which resulted in the revocation of his security clearance, without which he could not perform his AUO position. (Compl. ¶ 19.) Plaintiff brings this action pursuant to Sections 501 and 505 of the Rehabilitation Act, 29 U.S.C. §§ 791, 794a. (Compl. ¶ 3.)

## I. SUMMARY OF FACTS

Kincaid was employed by TVA from 1981 until 1998, working either as a nuclear AUO or in training for that position. (Compl. ¶¶ 11, 13; Little Decl. ¶ 5.) AUOs typically work in close proximity to the nuclear reactor vessel. (Sajwaj Decl. ¶ 2.) They frequently work alone with minimal or no supervision and must be able to remember highly specific procedures and implement them in precise sequences. (*Id.*) AUOs frequently diagnose, trouble-shoot, and solve problems before crises develop. (*Id.*) They perform in a host of potentially hazardous situations where not only their own safety is at risk, but also the health and welfare of the public and environment at large. (*Id.*) The AUO position requires an unescorted access security clearance. (Moss Decl.¶ 6, Ex. E.) In order to attain such clearance one must achieve favorable results on a security investigation and medical examination. (*Id.*; Sajwaj Decl. ¶ 2.)

In 1989 Kincaid became ill but continued working without accommodation. (Compl. ¶ 14.) In January 1992, he was placed on "no rotating shift work for 6 months" to accommodate a medical condition. (Moss Decl. ¶ 2, Ex. A.) A February 1993 medical evaluation reveals that plaintiff could not work rotating shifts. (*Id.*, Ex. B.) Plaintiff worked with the straight shift restriction until September 30, 1996, when he "was placed on at-home leave." (*Id.* ¶ 3, Ex. C.) At this time, budgetary cutbacks required that every AUO be able to work rotating shifts. (Little Decl. ¶ 3.) Because plaintiff could not work rotating shifts, he was placed on non-duty pay status and, on October 25, 1996, was issued a Notice of Proposed Termination. (*Id.*; Moss Decl. ¶ 4.) The notice stated that the position of AUO requires working a "rotating shift consisting of day, evening, and night shifts." (Moss Decl. ¶ 4, Ex. D.) The notice explained that termination was warranted because plaintiff's "most recent medical evaluation indicates that [he] cannot

2

fulfill" the rotating shift requirement. (*Id.*)  Because TVA had no "position available for

[plaintiff] that does not require working a rotating shift," plaintiff's "termination would promote

the efficiency of the service." (*Id.*)  The notice informed plaintiff that he would be on non-duty

pay status during the notice period and that he could "reply to the reason for the proposed

termination orally or in writing, or both, under the grievance procedure." (*Id.*)

Kincaid was not terminated in 1996 but was kept on non-duty pay status for almost six

months while TVA attempted to find a position with duties he could perform within his medical

restrictions or in the hope that his medical condition would improve. (Little Decl. ¶ 3.)  In

March or April 1997, TVA attempted to return Kincaid to work status on day shift. (Moss Decl.

¶ 5; Little Decl. ¶ 4.)  In order to return to his AUO position at Browns Ferry, Kincaid was

required to undergo a medical evaluation and a Fitness For Duty ("FFD") evaluation to reinstate

his unescorted access security clearance.[1]  (Moss Decl. ¶ 6; Little Decl. ¶ 5.)

In April 1997, Kincaid underwent an FFD evaluation. (Sajwaj Decl. ¶ 5.)  The

evaluation included intelligence and memory testing, the Booklet Category test, the Luria-

Nebraska Neuropsychological Battery, discussions with his supervisors, and interviews. (*Id.* ¶¶

---

[1] Employees returning to work after leave of more than thirty days must undergo a return-to-work medical examination and FFD determination. (Sajwaj Decl. ¶ 2.)  These evaluations are necessary to ensure that employees meet the standards set forth by the Nuclear Regulatory Commission for the unescorted access security clearance in generating plants and are capable of returning to work and performing their duties without endangering themselves, others, or TVA property. (*Id.*)  The standards, set forth at 10 C.F.R. § 73.56(b) and 10 C.F.R. § 26.10, require an FFD to ensure that individuals with unescorted access clearances are trustworthy and reliable and do not pose a health or safety risk to themselves, the public, or TVA. (*Id.*)  For example, FFD programs must "[p]rovide reasonable assurance that nuclear power plant personnel . . . will perform their tasks in a reliable and trustworthy manner and are not . . . mentally or physically impaired from any cause, which in any way adversely affects their ability to safely and competently perform their duties." 10 C.F.R. § 26.10(a).

5-8, Exs. A at 2, B.)  Four psychologists discussed Kincaid's tests and evaluations and

considered input from his physician.  (*Id.* ¶ 9.)  The evaluations found that Kincaid's cognitive

and intellectual abilities, specifically perception, reasoning, memory, judgment, and problem

solving, were adversely affected by a medical disorder, and that as a result he did not meet the

established standards for trustworthiness, reliability, and judgment.  (*Id.* ¶ 8.)  The psychologists

also considered the fact that Kincaid's supervisors noted his difficulties with memory and

performing tasks and had modified his duties to compensate for these limitations.  (*See id.* ¶ 7,

Ex. B.)  The psychologists denied psychological approval for Kincaid's unescorted access

clearance.  (*Id.* ¶ 9, Ex. A at 3.)  By letter dated  May 21, 1997, Kincaid was informed of the

denial of the required unescorted access security clearance.  (*Id.* ¶ 9, Ex. C.)  Kincaid was also

informed of the procedures by which he could have this decision reviewed.  (*See* 2d Casey Decl.

¶¶ 2-4.)[2]

On May 28, 1997, Kincaid requested review by the Screening Review Board.[3]  (Sajwaj

Decl. ¶ 9; Kincaid Decl. ¶ 13.)  Following an independent review by a  psychologist, Thomas W.

Ford, Ph.D., the Board upheld the denial of Kincaid's clearance.  (Sajwaj Decl. ¶ 11.)  By letter

dated July 21, 1997, Kincaid was so informed of the Board's decision.  (*Id.* ¶ 12, Ex. D.)

---

[2] TVA's motion for leave to submit this declaration outside the time limits set forth in the scheduling order is due to be granted, because it is offered to rebut Kincaid's argument in his brief that his procedural due process rights were violated because he was not provided adequate notice of his right to submit additional information on review.  (*See* Pl. Brief at 5-6.)

[3] The Screening Review Board is an independent and impartial administrative board whose purpose is to review denials/revocations of unescorted access security clearances in accordance with 10 C.F.R. § 73.56.  (Sajwaj Decl. ¶ 10.)  It makes the final determination within TVA of an individual's eligibility to hold the unescorted access security clearance.  (*Id.*)

Without nuclear unescorted access security clearance Kincaid could not work as a nuclear AUO or in any other position in the secured area of the plant. (Little Decl. ¶ 5.)

On March 25, 1998, Kincaid was issued a Notice of Proposed Termination.[4]  (Moss Decl. ¶ 9.)  On May 8, 1998, Kincaid filed a grievance under the collective bargaining agreement alleging that his Notice of Proposed Termination was "arbitrary and capricious." (Wilson-Renner Decl. ¶ 2, Ex. A.)  The grievance made no allegation of discrimination on the basis of disability.  (*Id.*)  On May 11, 1998, Kincaid was issued a Notice of Decision upholding his proposed termination because of the denial of the unescorted access authorization.  (Moss Decl. ¶ 10, Ex. G.)  Included in the Notice were the requirements for contesting his termination on the grounds of discrimination:

> If you believe this action is based, in whole or in part, on discrimination on the basis of race, color, religion, sex, national origin, handicap, age, and/or reprisal . . . you may file either an appeal with the Board or a complaint with TVA's Equal Opportunity Staff (EO).  If you elect to file a discrimination complaint, you must first contact an EO counselor within forty-five (45) days of the alleged discriminatory personnel action to begin the EO complaint procedure.

> If you decide to appeal, you must elect one of the above procedures.  Your appeal will not be processed under more than one.  If you file an appeal with the MSPB and a complaint with the EO, the one filed first will be considered an election by you to proceed in that forum, and any subsequent appeal will be dropped.

(Moss Decl. ¶ 10, Ex. G at 2.)  Kincaid was terminated on May 12, 1998.  (Moss. Decl. ¶ 10.) On June 18, 1998, plaintiff applied for retirement benefits, which were approved on August 19, 1998.  (Vaughn Decl. ¶¶ 2-3, Exs. A, B.)  On August 21, 2000, Kincaid and TVA reached a full

---

[4] Plaintiff was issued the Notice because he was denied an unescorted access security clearance.  (*See* Little Decl. ¶ 5.)

and complete resolution of Kincaid's May 8, 1998, grievance regarding his termination. (Wilson-Renner Decl. ¶ 3, Ex. B.)

TVA has no record that Kincaid ever contacted an EO counselor or filed an administrative complaint alleging discrimination. (Talley Decl. ¶ 2.) Kincaid testified that he "understood that [he] could either complain through the grievance process or through the EO office concerning [his] being treated wrong[ly] under the Rehabilitation Act and [his] disability not being accomodated." (Kincaid Decl. ¶ 14.) Kincaid filed a grievance rather than making a complaint through the EO office. (*See id.*) Kincaid also testified that "[t]he grievance procedure ended with a negotiated resolution which allowed [him] to obtain medical insurance but did not prejudice [his] right to pursue [his] claim under the Rehabilitation Act." (*Id.* ¶ 15.) Kincaid filed a complaint alleging that TVA terminated him as a result of regarding him as an individual with a disability in violation of Sections 501 and 505 of the Rehabilitation Act. (*See* Compl.)

## II. STANDARD FOR RULE 12(b)(1) DISMISSAL

A case should be dismissed if the court lacks subject matter jurisdiction over the action. FED. R. CIV. P. 12(b)(1). TVA argues that dismissal of this case under Rule 12(b)(1) is appropriate because plaintiff failed to exhaust his administrative remedies before filing the suit. (TVA Brief at 9-12.) TVA also argues that the court lacks subject matter jurisdiction because plaintiff challenges the denial of an unescorted access security clearance which TVA maintains is not subject to judicial review. (*Id.* at 12-14.)

If a Rule 12(b)(1) motion is a facial attack on jurisdiction, where the facts alleged supposedly do not provide cause for federal jurisdiction, then the facts alleged are entitled to a presumption of truthfulness. *Barnett v. Okeechobee Hosp.*, 283 F.3d 1232, 1237 (11th Cir.

2002). However, when a 12(b)(1) motion raises a factual attack on jurisdiction, where the facts supporting jurisdiction are themselves challenged, there is no presumption of truthfulness. *Id.* at 1237-38. In a factual challenge to subject matter jurisdiction, the court may look beyond the complaint, weighing evidence presented by the parties to ascertain whether subject matter jurisdiction actually exists. *See Scarfo v. Ginsberg*, 175 F.3d 957, 960 (11th Cir. 1999). In a factual challenge under Rule 12(b)(1), unlike in a Rule 12(b)(6) motion to dismiss or motion for summary judgment, the court is free to weigh the evidence and to determine for itself its power to hear the case. *Scarfo*, 175 F.3d at 960. When confronted with a factual attack, plaintiff has the burden of proving that jurisdiction exists. *OSI, Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002).

## III. DISCUSSION

### A.  Failure to Exhaust Administrative Remedies

Plaintiff brings this action pursuant to Sections 501 and 505 of the Rehabilitation Act, 29 U.S.C. §§ 791, 794a.[5] (Compl. ¶ 3.) Section 791 "imposes an obligation on federal agencies to promulgate affirmative action plans assuring 'adequate hiring, placement, and advancement opportunities for individuals with handicaps.'" *Doe v. Garrett*, 903 F.2d 1455, 1459 (11th Cir. 1990) (quoting 29 U.S.C. § 791(b)). Section 794a(a)(1) creates a private right of action under section 791 in favor a person subjected to disability discrimination by a federal agency. *Doe*, 903 F.2d at 1459. In the Eleventh Circuit, "[t]his private right of action, by its very terms, incorporates Title VII's requirement of exhaustion of administrative remedies." *Id.*, 903 F.2d at

---

[5] For sake of clarity, the court will hereinafter to Sections 501 and 505 of the Rehabilitation Act by the sections provided in the United States Code: sections 791 and 794a.

1459-60. Therefore, plaintiff's action is barred unless he has exhausted the administrative

remedies that are prerequisites to suit under Title VII.[6] *See id.*

Section 794a provides in pertinent part that

> the remedies, procedures, and rights set forth in section 717 of the
> Civil Rights Act of 1964 (42 U.S.C. 2000e-16), including the
> application of sections 706(f) through 706(k) (42 U.S.C. 20003-
> 5(f) through (k)), shall be available, with respect to any complaint
> under section 791 of this title, to any employee or applicant for
> employment aggrieved by the final disposition of such complaint,
> or by the failure to take final action on such complaint.

29 U.S.C. § 794a(a)(1). 42 U.S.C. § 20003-16, the procedures of which Section 794a specifically

adopts, provides in pertinent part that

> [w]ithin 90 days of receipt of notice of final action taken by a
> department or agency, or unit . . . on a complaint of discrimination
> . . . or after one hundred and eighty days from the filing of the
> initial charge with the department, agency, or unit . . . until such
> time as final action may be taken . . . an employee or applicant for
> employment, if aggrieved by the final disposition of his complaint,
> or by the failure to take final action on his complaint, may file a
> civil action as provided in section 2000e-5 of this title, in which
> civil action the head of the department, agency, or unit, as
> appropriate, shall be the defendant.

42 U.S.C. § 2000e-16(c). Before an aggrieved employee may seek relief by filing a civil action

in federal court, 42 U.S.C. § 2000e-16(c) requires him to "first seek relief in the agency that has

allegedly engaged in discrimination." *Grier v. Secretary of Army*, 799 F.2d 721, 724 (11th Cir.

---

[6] Although plaintiff pleads no cause of action under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, the complaint does mention that TVA is governed by the section's provisions. (*See* Compl. ¶ 2.) To the extent that the complaint could be interpreted to state a cause of action under section 794, it is subject to the same exhaustion requirements as suit brought under section 791. *Doe*, 903 F.2d at 1461 (explicitly adopting the "holding that private actions against federal government employers under the [Rehabilitation] Act, whether brought under section 791 or 794, must satisfy" Title VII's exhaustion of administrative remedies requirement).

1986).  When plaintiff has not filed a "complaint of discrimination" with the federal employer,

plaintiff's complaint in federal court must be dismissed.  *Id.*  Because plaintiff's Rehabilitation

Act suit is subject to the requirements of 42 U.S.C. § 2000e-16(c), it must be dismissed if

plaintiff has failed to file a "complaint of discrimination" with TVA.  *See id.*

Plaintiff alleges that he "has exhausted all of his administrative remedies."  (Compl. ¶

22.)  Because defendant has mounted a factual challenge to this allegation upon which the

court's subject matter jurisdiction depends, plaintiff's allegation is not entitled to a presumption

of truthfulness.  *See Barnett*, 283 F.3d at 1237.  Plaintiff failed to "consult a Counselor prior to

filing a complaint in order to try to informally resolve the matter" as required by 29 C.F.R. §

1614.105(a).[7]  It is undisputed that Kincaid did not file an administrative complaint alleging

discrimination with TVA as required by 42 U.S.C. § 2000e-16(c) and 29 C.F.R. § 1614.106(a).

(Talley Decl. ¶ 2; *see* Kincaid Decl. ¶ 14.)

Plaintiff contends that his pursuit of relief under the grievance procedures of the

collective bargaining agreement constitutes exhaustion of the requisite remedies.  (Pl. Brief at 4;

*see* Kincaid Decl., Ex. F.)  In support of this contention, plaintiff relies on 5 U.S.C. §§ 2302 and

7121.  5 U.S.C. § 2302 provides in pertinent part:

> Any employee who has authority to take, direct others to take,
> recommend, or approve any personnel action, shall not, with
> respect to such authority . . . discriminate for or against any
> employee or applicant for employment . . . on the basis of
> handicapping condition, as prohibited under section 501 of the
> Rehabilitation Act of 1973 (29 U.S.C. 791) . . . .

---

[7] Part 1614 of Title 29 of the Code of Federal Regulations prescribes the procedures for
making a complaint under the Rehabilitation Act against TVA.  *See* 29 C.F.R. § 1614.103(a),
(b)(3).

`

5 U.S.C. § 2302(b)(1).  5 U.S.C. § 7121 provides in pertinent part:

> An aggrieved employee affected by a prohibited personnel practice
> under section 2302(b)(1) of this title which also falls under the
> coverage of the negotiated grievance procedure may raise the
> matter under a statutory procedure or the negotiated procedure, but
> not both.

5 U.S.C. § 7121(d).  Thus, plaintiff contends that he exhausted the requisite administrative

remedies by filing a grievance and participating in the grievance procedures specified in the

collective bargaining agreement.  This argument is without merit.  First, the Federal Labor

Relations Act ("FLRA"), which includes section 7121, does not apply to TVA.[8] *Int'l Ass'n of*

*Machists and Aerospace Workers v. TVA*, 108 F.3d 658, 663 (6th Cir. 1997); *see* 5 U.S.C. §

7103(a)(2), (3)(E).  Second, plaintiff's grievance alleges only that his Notice of Proposed

Termination was "arbitrary and capricious."  (Wilson-Renner Decl. ¶ 2, Ex. A.)  It makes no

mention of discrimination on the basis of disability.  (*Id.*)  A  grievance that makes no mention of

a discriminatory basis for an employment decision  cannot constitute a "charge of

discrimination" under 42 U.S.C. § 2000e-16.[9]  *See Grier*, 799 F.2d at 724 (holding that a

grievance "related solely to questions of whether [the plaintiff] was more qualified than the

person selected and whether Army personnel complied with applicable regulations" that does not

mention any discriminatory basis for an employment decision does not constitute a "charge of

discrimination").  Therefore, plaintiff has failed to exhaust his administrative remedies.

---

[8] Under the FLRA, an "employee" is someone who is or was employed in an "agency."  5
U.S.C. § 7103(a)(2).  However, for purposes of Chapter 71, TVA is not an "agency."  5 U.S.C. §
7103(a)(3)(E).  Therefore, under the FLRA, TVA is not an agency, Kincaid is not an "aggrieved
employee" under section 7121.

[9] 42 U.S.C. § 2000e-16 "is a condition to the waiver of sovereign immunity and thus
must be strictly construed." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 94 (1990).

Failure to exhaust administrative remedies is a jurisdictional bar.  *See Crawford v. Babbitt*, 186 F.3d 1322, 1326 (11th Cir. 1999) ("A federal employee must pursue and exhaust her administrative remedies as a jurisdictional prerequisite to filing a Title VII action."). Because  plaintiff failed to exhaust his administrative remedies, his claim under the Rehabilitation Act must  be dismissed for lack of subject matter jurisdiction.  *See Babicz v. Sch. Bd. of Broward County*, 135 F.3d 1420, 1422 (11th Cir. 1998) (holding that plaintiff's failure to exhaust the IDEA's administrative procedures warranted the dismissal of ADA and Rehabilitation Act claims without prejudice for lack of subject matter jurisdiction).

**B.  The Denial of Plaintiff's Unescorted Access Clearance**

Even if plaintiff's suit should not be dismissed for the foregoing reasons, it should be dismissed because it arises out of the denial of an unescorted access clearance.  TVA terminated plaintiff because he was denied an unescorted access security clearance.  (*See* Compl. ¶ 10; Little Decl. ¶ 5.)  "[T]he grant or denial of security clearance to a particular employee is a sensitive and inherently discretionary judgment call that is committed by law to the appropriate Executive Branch agency . . . ."  *Mitchell v. Crowell*, 966 F. Supp. 1071, 1079 (N.D. Ala. 1996) (citing *Dep't of Navy v. Egan*, 484 U.S. 518 (1988)).  Judicial review of such decisions would be "an impermissible intrusion by the Judicial Branch into the authority of the Executive Branch over matters of national security."  *Perez v. FBI*, 71 F.3d 513, 515 (5th Cir. 1995) (holding that the court lacks subject matter jurisdiction to hear claim that employee's denial of a security clearance constituted retaliation).  Federal courts lack the jurisdiction to "review the Executive's decision to revoke a security clearance."  *Brazil v. United States Dep't of the Navy*, 66 F.3d 193, 195 (9th Cir. 1995).  This "bar to review applies equally . . . in the context of a Title VII

11

discrimination action." *Id.*, 66 F.3d at 196.  *See Becerra v. Dalton*, 94 F.3d 145, 148-49 (4th Cir.

1996) (barring Title VII claim); *Guillot v. Garrett*, 970 F.2d 1320, 1324 (4th Cir. 1992) (barring

Rehabilitation Act claim).  Consequently, this court lacks the jurisdiction to consider plaintiff's

claim that the denial of his unescorted access clearance at the nuclear facility violated the

Rehabilitation Act.

Plaintiff suggests that even if the denial of an unescorted access clearance is not generally

subject to judicial review, the court has the power to review such a denial that issued contrary to

governing law.  (*See* Pl. Brief at 5.)  10 C.F.R. § 73.56 states in pertinent part:

> Individuals who have had an uninterrupted unescorted access
> authorization for at least 180 days on April 25, 1991 need not be
> further evaluated.  Such individuals shall be subject to the
> behavioral observation requirements of this section.

10 C.F.R. § 73.56(c)(1).  Plaintiff argues that because he had held uninterrupted unescorted

access clearance for 180 days on April 25, 1991, (Kincaid Decl. ¶ 3), TVA had no right to

further evaluate his clearance.  (*See* Pl. Brief at 5.)  This argument is unpersuasive.  First, by its

terms, the regulation does not prohibit TVA from further evaluating such individuals, but merely

states that a reevaluation is not required.  Second, the court agrees with defendant's contention

that this provision is merely a grandfather clause, allowing, but not requiring TVA to grant

clearances under the current procedures to  individuals with clearances under old procedures.

Third, the regulation expressly states that individuals who have held an uninterrupted unescorted

access authorization for 180 days on April 25, 1991, are still subject to "behavioral observation

requirements."  10 C.F.R. § 73.56(c)(1).  "Behavioral observation" is "designed to detect

individual behavior changes which, if left unattended, could lead to acts detrimental to the public

health and safety."  10 C.F.R. § 73.56(b)(2)(iii).  The court cannot accept plaintiff's construction

12

of this regulation, under which it would follow that an individual who possessed uninterrupted unescorted access for 180 days on April 25, 1991, could not be stripped of his access authorization even if behavioral observation detected that the individual could pose a threat to the public health and safety.  Because there is no indication that the denial of an unescorted access authorization to Kincaid contravened governing law, the court lacks the jurisdiction to review the decision.

CONCLUSION

For the reasons stated herein, defendant's motion to dismiss for lack of subject matter jurisdiction is due to be granted.  An order granting defendant's motion and dismissing this case will be entered contemporaneously with this Opinion.

**DONE** this 3rd day of May, 2002.

SHARON LOVELACE BLACKBURN
United States District Judge